McCARTER & ENGLISH, LLP
MARK D. GIARRATANA (*pro hac vice*)
*mgiarratana@mccarter.com*
THOMAS J. RECHEN (*pro hac vice*)
*trechen@mccarter.com*
KEVIN L. REINER (*pro hac vice*)
*kreiner@mccarter.com*
CityPlace I, 36th Floor
185 Asylum Street
Hartford, CT 06103
Telephone: (860) 275-6700
Facsimile: (860) 724-3397

NOSSAMAN LLP
JAMES H. VORHIS (SBN 245034)
*jvorhis@nossaman.com*
DAVID C. LEE (SBN 193743)
*dlee@nossaman.com*
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:  (415) 398-3600
Facsimile:   (415) 398-2438

Attorneys for Defendant FINELITE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEOUL SEMICONDUCTOR CO., LTD., and SEOUL VIOSYS CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> FINELITE, INC., <br><br> Defendant. <br> -------------------------------------------------- <br> FINELITE, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> SAMSUNG SEMICONDUCTOR, INC., <br><br> Third-Party Defendant. | Case No:  3:22-cv-02869-TLT <br><br> **DEFENDANT FINELITE INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Date: June 20, 2023 <br> Time: 2:00 p.m. <br> Location: Courtroom 9, 19th Floor <br><br> Action Filed: May 13, 2022 |

Case No. 3:22-cv-02869-TLT
DEFENDANT FINELITE, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ i

I. NOTICE OF MOTION ........................................................................................................... 1

II. STATEMENT OF ISSUES TO BE DECIDED .................................................................... 1

III. STATEMENT OF RELEVANT FACTS ............................................................................... 1

    A. Background About Finelite, Samsung and the Seoul Plaintiffs ................................ 1

    B. Patent Marking ........................................................................................................... 2

IV. ARGUMENT ............................................................................................................................ 4

    A. Applicable Legal Standards ....................................................................................... 4

        (1) Rule 12(b)(6) ................................................................................................. 4

        (2) Judicial Notice and Incorporation by Reference ........................................ 4

        (3) Virtual Patent Marking ................................................................................. 6

    B. Plaintiffs' allegations in the SAC that they complied with the "association" requirement of the patent marking statute are not plausible and should be dismissed .................................................................................................................... 8

        (1) Seoul Semiconductor's virtual marking patent lists of Exhibit 15 merely associate registered trademarks with groups of patents, do not associate any specific product it has marked with the patents which cover it, and therefore fail to meet the "association" requirement of the marking statute .............................. 8

            a) Seoul Semiconductor's website referenced in the SAC further establishes that its virtual marking patent lists of Exhibit 15 do not "associate" any specific product they have marked with the patents which cover it ........... 13

        (2) Seoul Viosys' website referenced in the SAC establishes that its "UV LED™" patent listing of Exhibit 16 (ECF No. 93-16) refers to a catalog of "UV LED" products, does not associate any specific product it has marked with the patents which cover it, and therefore fails to meet the "association" requirement of the marking statute ................................................................................ 15

V. CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
   603 F. Supp. 3d 857 (N.D. Cal. 2022) ................................................................................ 4, 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 4

*Baja Ins. Serv., Inc. v. Shanze Enters., Inc.*,
   No. 2:16-CV-02423 (KJM), 2016 WL 1267999 (E.D. Cal. Mar. 31, 2016) ........................ 5, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 4

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
   489 U.S. 141, 109 S. Ct. 971, 103 L. Ed. 2d 118 (1989) ........................................................ 6

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................................................... 7

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ................................................................................................. 4

*Lindora, LLC v. Limitless Longevity, LLC*,
   No. 15-cv-2847 (JAH), 2016 WL 6804443 (S.D. Cal. Sept. 29, 2016) ................................... 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ................................................................................................. 4

*Mfg. Res. Int'l v. Civiq Smartscapes, LLC*,
   397 F. Supp. 3d 560 (D. Del. 2019) ................................................................................ passim

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
   138 F.3d 1437 (Fed. Cir. 1998) ............................................................................................... 6

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................................................... 4, 8

*Sun v. Rickenbacker Collections*,
   2012 WL 2838782 (N.D. Cal. July 10, 2012) ....................................................................... 16

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ................................................................................................... 5

*Wible v. Aetna Life Ins. Co.*,
   375 F. Supp. 2d 956 (C.D. Cal. 2005) ..................................................................................5

**Statutes**

15 U.S.C. § 1057(c) .............................................................................................................9

35 U.S.C. § 287................................................................................................................ *passim*

15 U.S.C. §§ 1141k and 1065 .............................................................................................9

**Other Authorities**

Fed. R. Civ. P. 12(a)(4)(A) ................................................................................................16

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 4

Fed. R. Evid. 201(b)............................................................................................................4

6A Donald S. Chisum, *Chisum on Patents* § 20.03[7][c][iii] .........................................13

1

## I.  NOTICE OF MOTION

Defendant Finelite, Inc. ("Defendant") hereby notices this partial motion to dismiss the Second Amended Complaint For Patent Infringement (the "SAC") (ECF No. 93) of Seoul Semiconductor Co., Ltd. and Seoul Viosys Co., Ltd. (individually "Plaintiff," collectively "Plaintiffs" or "Seoul Plaintiffs") to be heard on June 20, 2023 at 2:00 pm in Courtroom 9, 19th Floor, before the Honorable Trina L. Thompson.

This motion seeks to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) Plaintiffs' claims for (i) pre-suit damages under Counts 1-5, 8-11, 13 and 14, and (ii) damages prior to March 24, 2020 under Counts 6, 7 and 12.

## II.  STATEMENT OF ISSUES TO BE DECIDED

Whether the SAC alleges facts sufficient to plausibly state claims for (i) pre-suit damages under Counts 1-5, 8-11, 13 and 14, and (ii) damages prior to March 24, 2020 under Counts 6, 7 and 12, or whether Plaintiffs' allegations of compliance with the "association" requirement of the patent marking statute, 35 U.S.C. § 287, *i.e.*, that their virtual marking patent lists "associate[] the patented article with the number of the patent," contradict matters that are properly subject to judicial notice or by exhibits and should not be accepted as true.

## III.  STATEMENT OF RELEVANT FACTS

### A.  Background About Finelite, Samsung and the Seoul Plaintiffs

The SAC asserts that Finelite is infringing 14 patents "relating to light emitting diodes ('LEDs') and LED lighting." ECF No. 93 at ¶ 1. Finelite does not manufacture LEDs. Rather, cross-defendant Samsung Semiconductor, Inc. ("Samsung") manufactures the LEDs accused of infringement by the Seoul Plaintiffs and sells them to Finelite. ECF No. 71 at 2. Finelite manufactures and sells high-quality lighting products that use the accused infringing LEDs purchased from Samsung. *Id*. Finelite has filed a third-party complaint against Samsung seeking, *inter alia*, a declaratory judgment that Samsung has a duty to defend and indemnify Finelite against the Seoul Plaintiffs' patent infringement claims. ECF No. 71.

1

The SAC alleges that Seoul Semiconductor is "one of the largest manufacturers of LEDs in the world" and that Seoul Viosys "is also a leading company in the LED industry." ECF No. 93 at ¶ 2. The Seoul Plaintiffs claim to own "[m]ore than 18,000 patents" which "cover a wide range from [LED] chips to applications." Declaration of Kevin L. Reiner ("Reiner Decl."), Exs. N and T. In addition, they claim to "have been actively involved in crackdowns on all organizations that violate [their] intellectual property rights," and promise "to continue to take all necessary measures in all countries to prevent such infringement." Reiner Decl., Ex. N; *see also* Ex. T (containing similar statements). Despite such bravado, the Seoul Plaintiffs have taken no such measures against the source of the accused infringing LEDs in this case, Samsung. Instead, the Seoul Plaintiffs have elected to sue Finelite, one of Samsung's customers of the accused infringing LEDs. As part of this "crackdown," the Seoul Plaintiffs seek an award of damages for past infringement going back six years. ECF No. 93, p. 43, ¶ C.

**B.      Patent Marking**

Critical to their ability to maximize their claim for past damages against Finelite, the Seoul Plaintiffs must be able to plead and prove compliance with the patent marking statute, 35 U.S.C. § 287, throughout the six-years preceding suit.[1] Despite their vast patent portfolio, the Seoul Plaintiffs have not complied with the constructive notice provisions of the patent marking statute. In light of this, their original Complaint (ECF No. 1) did not contain any allegations of compliance with the constructive notice provisions of the marking statute. Finelite moved to partially dismiss the original Complaint on this basis, among others. ECF No. 24. Rather than oppose Finelite's first motion for partial dismissal, the Seoul Plaintiffs filed the First Amended Complaint (the "FAC"). ECF No. 40. The FAC attempted to plead compliance with the constructive notice provisions of the marking statute, but failed to do so. Finelite filed a partial motion to dismiss the FAC on this ground, among others. ECF No. 44. The Court granted

---

[1] The SAC alleges providing actual pre-suit notice of the alleged infringement only with respect to the patents asserted in Counts 6, 7 and 12, and no earlier than March 24, 2020. ECF No. 93, ¶ 25.

Finelite's motion on this issue, finding that "Plaintiffs did not sufficiently plead compliance with the marking statute." ECF No. 90 at 5.

The Seoul Plaintiffs have attempted yet again to plead compliance with the constructive notice provisions of the patent marking statute, but fail to do so. The Seoul Plaintiffs now allege they have marked "substantially all" of their "products covered by the Patents-in-Suit" or the "product packaging" "by fixing thereon the word 'patent,' along with those patent numbers *or an internet address at which the Seoul Plaintiffs posted information associating the patented products with their corresponding patent numbers* (including the Patents-in-Suit), in compliance with 35 U.S.C. § 287." ECF No. 93, ¶ 45 (emphasis added).

Plaintiffs' webpages corresponding to the virtual marking patent lists of Exhibits 15 and 16 (ECF Nos. 93-15, -16) claim that Plaintiffs' "18,000 patents cover a wide range from [LED] chips to applications." Reiner Decl., Ex. N. However, the virtual marking patent lists downloadable from those webpages (ECF Nos. 93-15 and -16) fail to identify any specific product within Plaintiffs' "wide range" of LED "chips," much less "associate" any such product with specifically which of their "more than 18,000 patents" cover it. The Seoul Plaintiffs' allegation of compliance with the "association" requirement of the patent marking statute is contradicted by the virtual marking patent listings attached as Exhibits to the SAC, the Plaintiffs' webpages alleged in the SAC, and their trademark registrations, related sworn statements and public webpages that are properly the subject of judicial notice. There is no reasonable dispute that Plaintiffs' virtual marking patent lists, including the patents-in-suit, failed to "associate[]" any specific product they have allegedly marked with the patents that cover it. Rather, the virtual marking patent lists at issue merely associate trademarks representing groups of products or technologies with the patents-in-suit.

## IV. ARGUMENT

### A. Applicable Legal Standards

#### (1) Rule 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true," the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

#### (2) Judicial Notice and Incorporation by Reference

The Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Proper subjects of judicial notice when ruling on a motion to dismiss include . . . publically accessible websites[.]" *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 866 (N.D. Cal. 2022) (quoting *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) (taking

judicial notice of, *inter alia*, screenshots of webpages); *see also Lindora, LLC v. Limitless Longevity, LLC*, No. 15-cv-2847 (JAH), 2016 WL 6804443, at *2 (S.D. Cal. Sept. 29, 2016) ("When ruling on a motion to dismiss, proper subjects of judicial notice include . . . court documents already in the public record or filed with other courts, and publicly accessible websites") (citing *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965–66 (C.D. Cal. 2005)) (additional citations omitted). Indeed, in *Al-Ahmed*, *Lindora*, and *Wible*, the courts took judicial notice of publicly available webpages and information. *Al-Ahmed*, 603 F. Supp. 3d at 868–69; *Lindora*, 2016 WL 6804443, at *3 (taking judicial notice of "hard copies of various publicly available webpages"); *Wible*, 375 F. Supp. 2d at 965–66. Additionally, federal trademark registrations and their file histories which are publicly available on the U.S. Patent & Trademark Office ("USPTO") website also are proper subjects of judicial notice on a motion to dismiss. *Baja Ins. Serv., Inc. v. Shanze Enters., Inc.*, No. 2:16-CV-02423 (KJM), 2016 WL 1267999, at *1 (E.D. Cal. Mar. 31, 2016) ("these documents are public records that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'") (quoting *Autodesk, Inc. v. Dassault Sys. SolidWorks Corp.*, No. 08-4397, 2008 WL 6742224, at *2 n.1 (N.D. Cal. Dec. 18, 2008) (taking judicial notice of trademark registrations and applications publicly available on USPTO website on motion to dismiss)).

While "materials that are submitted with and attached to the Complaint" always may be considered on a motion to dismiss, the Court "may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (citation omitted); *Al-Ahmed*, 603 F. Supp. 3d at 866-67 (incorporating by reference on motion to dismiss email notifications and user accounts that received notifications, where they were central to plaintiff's claim and their authenticity was not disputed).

"A court's consideration of documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice will not convert a motion for

dismissal into a motion for summary judgment." *Baja*, 2016 WL 1267999, at *2 (citing *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).

### (3) Virtual Patent Marking

The patent marking statute, 35 U.S.C. § 287, creates a notice requirement for a patentee to receive damages for infringement. In order to comply with the virtual marking provisions of the statute, "[p]atentees . . . may give notice to the public that the [patented article] is patented . . . by fixing thereon the word 'patent' or the abbreviation 'pat.' together with an address of a posting on the Internet . . . *that associates the patented article with the number of the patent* . . . ." 35 U.S.C. § 287(a) (emphasis added). "The notice requirement is designed for the information of the public and provides a ready means of discerning the status of the intellectual property embodied in an article of manufacture or design." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162, 109 S. Ct. 971, 103 L. Ed. 2d 118 (1989) (citation omitted). "In determining whether the patentee marked its products sufficiently to comply with the constructive notice requirement, the focus is not on what the infringer actually knew, but on whether the patentee's actions were sufficient, in the circumstances, to provide notice *in rem*." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). "The virtual marking requirement was intended to provide such notice in a manner commensurate with the notice provided by physical marking." *Mfg. Res. Int'l v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 577 (D. Del. 2019) (footnote omitted) (the "USPTO . . . report to Congress in 2014 on virtual marking" gives no "indicat[ion] that Congress intended to decrease the notice provided by marking, either physical or virtual").

The "association" requirement of the marking statute requires the virtual marking webpage to "associate[]" each patented article with the number of each patent which covers it:

> The plain language of the marking statute requires that the website (the 'internet posting') '*associate*[ ] the patented article with the number of the patent.' 35 U.S.C. § 287 [emphasis in original]. A patentee may not rely on the mere fact that the product is marked

1

> with the website for 'association'; the statute is clear that it is the function of the website to associate the patent and the patented article. This requirement ensures that virtual marking provides a level of notice commensurate with that of physical marking—the product is associated with the patent, even where a patentee may use a single website to mark multiple products.

*Id*. Accordingly, a plaintiff's virtual marking website must associate each "specific product it has marked with the patents which cover it." *Id*. at 578. Identification of the specific product associated with each patent is necessary to provide a level of notice "commensurate with the notice provided by physical marking" to which the patent number is applied and, thus, to notify the public of the specific patented article covered by the patent. *Id*. at 577. A plaintiff's virtual marking website that "does not mention a single specific patented article by product number or product name," does nothing to "associate" any "specific product it has marked with the patents which cover it." *Id*. at 577–78. Such a website "does not provide 'a ready means of discerning the status of the intellectual property embodied in an article of manufacture or design,'" and "is insufficient as a matter of law to meet the requirements of virtual marking under § 287." *Id*. at 578 (quoting *Bonito Boats*, 489 U.S. at 162).

In *Manufacturing Resources*, the plaintiff's virtual marking website provided a list of patents including a heading describing the category of patents appearing in the list (*e.g.*, "MRI LCD Display Patents"), but did "not mention a single specific patented article by product number or product name." 397 F. Supp. 3d at 578. Copies of such webpages at issue in *Manufacturing Resources* are attached to the Reiner Declaration as Exhibit A.[2] *See also* 397 F. Supp. 3d. at 577 (webpages located in the court record at Document 242, Ex. EEEE). The court held that such a "website does nothing to 'associate' any of the . . . patents with any of the . . . covered products," does not "provide a ready means of discerning the status of the intellectual

---

[2] "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)); *see also Lindora*, 2016 WL 6804443, at * 2 ("When ruling on a motion to dismiss, proper subjects of judicial notice include . . . court documents already in the public record or filed with other courts") (citing *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002)).

property embodied in an article of manufacture or design," and "is insufficient as a matter of law to meet the requirements of virtual marking under § 287." *Id*. at 578 (internal quotation marks omitted).

**B.    Plaintiffs' allegations in the SAC that they complied with the "association" requirement of the patent marking statute are not plausible and should be dismissed**

The SAC alleges "the Seoul Plaintiffs posted information associating the patented products with their corresponding patent numbers (including the Patents-in-Suit), in compliance with 35 U.S.C. § 287" at "the following URLs –

http://www.seoulsemicon.com/en/support/parent_portfolio and

http://www.seoulviosys.com/en/technology/legal/."

ECF No. 93 at §§ 45–46. These allegations "contradict matters properly subject to judicial notice or by exhibit," and therefore the Court should not accept them as true. *Sprewell*, 266 F.3d at 988.

   **(1)    Seoul Semiconductor's virtual marking patent lists of Exhibit 15 merely associate registered trademarks with groups of patents, do not associate any specific product it has marked with the patents which cover it, and therefore fail to meet the "association" requirement of the marking statute**

Exhibit 15 to the SAC contains 11 patent listings, where each listing contains numerous patents and a heading purportedly describing the patented article or articles covered by the patents in the list.[3] ECF No. 93-15. The patents asserted in Counts 1-9, 11, 12 and 14 of the SAC are included within patent lists bearing only the following trademarks as headings:

   1.   "Acrich MJT™";

   2.   "Acrich2™, 3™";

   3.   "WICOP™"; and

   4.   "Sunlike™".

---

[3] Plaintiffs attached as Exhibits 15 and 16 to the SAC copies "of the most recent virtual marking patent lists for Seoul Semiconductor and Seoul Viosys, respectively," which are downloadable at the two above-mentioned URLs. ECF No. 93, ¶ 46. Therefore, pursuant to the incorporation doctrine, the Court may properly consider such Exhibits on this motion to dismiss. *Supra*, p. 5.

1

ECF No. 93-15 at 4-7, 15-18, 23-24. As indicated by Plaintiffs' usage of the raised "TM" (™), each heading consists of one or more trademarks. Seoul Semiconductor has registered each of these trademarks at the USPTO. As matters of public record, available on public (and governmental) websites, the Court may take judicial notice of the USPTO "Trademark Electronic Search System" or "TESS" records of these marks and the relevant portions of their file histories and properly consider the records on this motion to dismiss. *Supra*, p. 4–5. Copies of the TESS records for the above trademarks and relevant portions of their file histories are attached to the Reiner Declaration as Exhibits B – M, respectively.

Each above-identified trademark registration was issued to Seoul Semiconductor on the Principal Register, which "constitute[s] constructive use of the mark . . . on or in connection with the goods . . . specified in the registration." 15 U.S.C. § 1057(c). After five years from the date of registration, Seoul Semiconductor filed combined declarations of continued use and incontestability under Sections 71 and 15 of the Trademark Act, 15 U.S.C. §§ 1141k and 1065, respectively, swearing that the mark was, in fact, in use in commerce in connection with numerous different goods as follows:

| Trademark (Registration No.) | Goods for Which Mark Was Used in Commerce Per Seoul Semiconductor's Sworn Statement to USPTO | Citation to Reiner Declaration |
|---|---|---|
| Acrich MJT (Reg. No. 4,527,553) | Diodes; light emitting diodes; top light emitting diodes; power light emitting diodes; chip light emitting diodes; big top light emitting diodes; high flux light emitting diodes; side view light emitting diodes, in Int'l Class 009.<br><br>Light emitting diode (LED) lamps; light emitting diode (LED) lighting fixtures, in Int'l Class 011. | Reiner Decl. Exs. C at 2-3 and E at 1, 3-4. |
| Acrich2 (Reg. No. 4,244,733) | Diodes; light emitting diodes; top light emitting diodes; power light emitting diodes; chip light emitting diodes; big top light emitting diodes; high flux light emitting diodes; side view light emitting diodes; electroluminescence diodes; laser diodes; luminous or mechanical traffic signal devices, namely, traffic-light apparatus; traffic signaling panels, luminous or mechanical; road signs, luminous or | Reiner Decl. Ex. G at 2, 3. |

| | | |
|---|---|---|
| | mechanical; safety signaling panels, luminous or mechanical; safety display panels, luminous or mechanical; signaling panels luminous or mechanical; luminous signs; luminous beacons, namely, for safety purposes; vehicle breakdown warning triangles, luminous; incubators for bacteria culture; constant-temperature incubators for bacteria cultures; light emitting diode displays; flashlights with light emitting diode LED for use in photography, in Int'l Class 009.<br><br>Lights for ships; lamps for directional signals of ships; light bulbs for directional signals for ships; headlights for ships; lights for aircrafts; lamps for directional signals of aircrafts; light bulbs for directional signals of aircrafts; headlights for aircrafts; lights for railway vehicles; lamps for directional signals of railway vehicles; headlights for railway vehicles; cycle lights; automobile lights; lamps for directional signals of automobiles; light bulbs for directional signals of automobiles; headlights for automobiles; bicycle lights; air purifying apparatus and machines; air deodorizing apparatus, namely, electric room deodorizing units; water sterilizers; street lamps; germicidal lamps for purifying air; ultraviolet ray lamps, not for medical purposes; germicidal lamps, not for medical purposes; spotlights; decorative electric lights, namely, fairy lights; electric torches for lighting; fairy lights for festive decoration; electric lights for Christmas trees; standard lamps; artificial solar lamps; fluorescent lamps; water purifying apparatus for household purposes; humidifiers; electric refrigerators; electric kettles; light emitting diode LED lamps; dish disinfectant apparatus for household purposes, namely, disinfecting ultraviolet lamps housed in a container or cover for disinfecting dishes; flashlights; light emitting diode LED lighting fixtures; light emitting diode LED lighting fixtures for use in display, commercial, industrial, residential, and architectural accent lighting applications; lamps; crank-powered portable lamps; light emitting diode LED lamps whose light can be turned in all directions; overhead lamps; projector lamps; safety lamps for underground use; tanning lamps; vehicle dynamo lamps; outdoor lamps, in Int'l Class 011. | |
| Acrich3<br>(Reg. No. 4,315,332) | Diodes; light emitting diodes; top light emitting diodes; power light emitting diodes; chip light emitting diodes; big top light emitting diodes; high flux light emitting diodes; side view light emitting diodes; electroluminescence | Reiner Decl. Ex. I at 3-4. |

| | | |
|---|---|---|
| | diodes; laser diodes; traffic signal devices luminous or mechanical; traffic signaling panels luminous or mechanical; road signs luminous or mechanical; safety signaling panels luminous or mechanical; safety display panels luminous or mechanical; signaling panels luminous or mechanical; luminous signs; luminous beacons; vehicle breakdown warning triangles luminous; incubators for bacteria culture; constant-temperature incubators for bacteria cultures; light emitting diode displays, in Int'l Class 009.<br><br>Lights for ships; lamps for directional signals of ships; light bulbs for directional signals for ships; headlights for ships; lights for aircrafts; lamps for directional signals of aircrafts; light bulbs for directional signals of aircrafts; headlights for aircrafts; lights for railway vehicles; lamps for directional signals of railway vehicles; headlights for railway vehicles; cycle lights; automobile lights; lamps for directional signals of automobiles; light bulbs for directional signals of automobiles; headlights for automobiles; bicycle lights; air purifying apparatus and machines; air deodorizing apparatus, namely, electric room deodorizing units; water sterilizers; street lamps; germicidal lamps for purifying air; ultraviolet ray lamps, not for medical purposes; germicidal lamps, not for medical purposes; spotlights; decorative electric lights, namely, fairy lights; electric torches for lighting; fairy lights for festive decoration; electric lights for Christmas trees; standard lamps; artificial solar lamps; fluorescent lamps; water purifying apparatus for household purposes; humidifiers; electric refrigerators; electric kettles; light emitting diode LED lamps; dish disinfectant apparatus for household purposes; flashlights; light emitting diode LED lighting fixtures; light emitting diode LED lighting fixtures for use in display, commercial, industrial, residential, and architectural accent lighting applications; lamps; crank-powered portable lamps; light emitting diode LED lamps whose light can be turned in all directions; overhead lamps; projector lamps; safety lamps for underground use; tanning lamps; vehicle dynamo lamps; outdoor lamps; flashlights with light emitting diode LED for use in photography, in Int'l Class 011. | |
| WICOP (Reg. No. 5,010,295) | Diodes; light emitting diodes; top light emitting diodes; power light emitting diodes; chip light emitting diodes; big top light emitting diodes; high flux light emitting diodes; | Reiner Decl. Ex. K at 2-3, 4-5. |

| | |
|---|---|
| | side view light emitting diodes; electroluminescent diodes; luminous signs; luminous beacons; vehicle breakdown warning triangles luminous; lighting ballasts; eyeglasses, including eyeglasses for VR device display; goggles for sports; contact lenses; power distributors; transformers electricity; condensers capacitors; semi-conductors; transistors; light emitting diode displays; flashlights with light emitting diodes for use in photography, in Int'l Class 009.<br><br>lights for ships; lamps for directional signals of ships; light bulbs for directional signals for ships; headlights for ships; lights for aircrafts; lamps for directional signals of aircrafts; light bulbs for directional signals of aircrafts; headlights for aircrafts; lights for railway vehicles; lamps for directional signals of railway vehicles; headlights for railway vehicles; cycle lights; automobile lights; lamps for directional signals of automobiles; light bulbs for directional signals of automobiles; headlights for automobiles; bicycle lights; standard lamps; light emitting diode lamps; flashlights; light emitting diode lighting fixtures; light emitting diode lighting fixtures for use in display, commercial, industrial, residential and architectural accent lighting applications; electric lamps; light emitting diode LED rotation lamps; non-electronic lamps; outdoor lamps; overhead lamps, in Int'l Class 011. | |

There is no reasonable dispute that Seoul Semiconductor registered each mark for the goods set forth in the respective trademark registration, and filed with the USPTO sworn statements that it had used each mark in interstate commerce to identify numerous registered goods as set forth above. Nor is there any reasonable dispute that Seoul Semiconductor's registered trademarks identify the many products they were registered for, do not identify any "single specific patented article by product number or product name," and do "nothing to 'associate' any specific product it has marked with the patents which cover it." *Mfg. Res.*, 397 F. Supp. 3d at 578. Seoul Semiconductor's "Acrich MJT™", "Acrich2™, 3™", "WICOP™", and "Sunlike™" patent listings of Exhibit 15 are "insufficient as a matter of law to meet the requirements of virtual marking under § 287" for at least these reasons. Plaintiffs' virtual marking allegations and claims for pre-suit damages for Counts 1-9, 11, 12 and 14 should be

1

dismissed, and claims for damages for Counts 6, 7 and 12 before March 24, 2020 should be dismissed.[4]

### a) Seoul Semiconductor's website referenced in the SAC further establishes that its virtual marking patent lists of Exhibit 15 do not "associate" any specific product they have marked with the patents which cover it

Plaintiffs' above webpages are properly considered in connection with this motion to dismiss because they are referenced in the SAC, are central to Plaintiffs' claim that they complied with the "association" requirement of the patent marking statute, and Plaintiffs cannot question the authenticity of their own webpages.[5] *Supra*, p. 4-5.

Seoul Semiconductor's webpage corresponding to the virtual marking patent lists of Exhibit 15 (http://www.seoulsemicon.com/en/support/parent_portfolio) prominently displays a pie chart including within it segments of the pie labeled with trademarks corresponding to the headings of the virtual marking patent lists, *i.e.*, "Acrich," "MJT," "WICOP," and "SunLike." Reiner Decl., Ex. N. Similarly, Seoul Viosys' webpage corresponding to the virtual marking patent list of Exhibit 16 (http://www.seoulviosys.com/en/technology/legal/) prominently displays a chart including within it segments labeled with trademarks corresponding to the headings of the virtual marking patent lists of Exhibit 15, *i.e.*, "Acrich," "MJT," and "WICOP." Reiner Decl., Ex. T.

Seoul Semiconductors' above webpage includes in the upper portion thereof a menu bar with menus labelled "Technology" and "Product." Hovering the cursor over the "Technology" menu displays the "World's First 8 Technologies," which include, *inter alia*, "Sunlike," "WICOP," "Filament," "Acrich" and "WICOP Pixel." Reiner Decl., Ex. O. The "Sunlike," "WICOP,"

---

[4] Plaintiffs must plead and prove compliance with the constructive notice provisions of the marking statute for *all* patented products. 6A Donald S. Chisum, *Chisum on Patents* § 20.03[7][c][iii] ("persons under the duty to mark must so mark *all* patented articles made and sold") (emphasis in original). The failure of a virtual patent marking list to comply with the "association" requirement precludes compliance with the marking statute by the patented product(s) on that list, and thus precludes compliance with the marking statute for the patent(s) that cover such product(s). *Mfg. Res.*, 397 F. Supp. 3d at 578.

[5] Alternatively, Plaintiffs' webpages are proper subjects of judicial notice when ruling on a motion to dismiss as publically accessible websites. *Supra*, p. 4–5.

1

"Filament," and "Acrich" "Technologies" all correspond to headings in the virtual marking patent list downloadable on the same webpage, further establishing that such headings do not identify any specific patented article, but merely categorize the patents in the respective listings by "Technology." *See* SAC at Exhibit 15, ECF No. 93-15; *see also* Reiner Decl., Ex. K at 13 (Specimen of Use filed with USPTO by Plaintiff describing "Sunlike" and "WICOP" as "Seoul Technologies").

Meanwhile, hovering the cursor over the "Product" menu at the top of the same webpage displays Seoul Semiconductors' products in different business segments. The patents asserted in Counts 1-9, 11, 12 and 14 of the SAC are included within patent lists bearing the following trademarked headings: "Acrich MJT™", "Acrich2™, 3™", "WICOP™" and "Sunlike™." There is no reasonable dispute that these headings do not appear as the name of any "Product" under the "Product" menu of the webpage. In the "Lighting" segment, the products are categorized as follows: "High Power," "Mid Power," "Horticulture," "Low Power," "COB," "Filament," "Drivers" and "Acrich Modules." Reiner Decl., Ex. P. Each of these categories includes within it subcategories of products. Clicking on any of the categories or subcategories shows that the products have names and part numbers. For example, in the "High Power" category, the first product name is "4040," and there are several "Part Nos." under that product name, *i.e.*, "SAW09D0A" and "SAW89D0A." Reiner Decl., Ex. Q. Clicking on other product names reveals other extensive part number listings. As one example, in the "Mid Power" category, the last product name is "3020," and there are multiple "Part Nos." under that product name, *e.g.*, STW8B12B-IZ, STW8B12C, etc. Reiner Decl., Ex. R. Yet further, in the "Horticulture" category, the product name is "Horticulture," and there are multiple "Part Nos." under that product name too, *e.g.*, SZ5-M4-B0-00, SZ5-M4-W0-C9, etc. Reiner Decl., Ex. S. No such product names or part numbers appear in the virtual marking patent lists of Exhibits 15 and 16. *Compare* ECF Nos. 93-15, 93-16 *with* Reiner Decl., Exs. Q, R, S. Accordingly, the website that Plaintiff relies on in the SAC further reinforces that the headings of the virtual marking patent lists of Exhibit 15—"Acrich MJT™", "Acrich2™, 3™", "WICOP™" and "Sunlike™"—"do[] not mention a specific patented article by product number or product

name" and "do[] nothing to 'associate' any specific product it has marked with the patents which cover it." *Mfg. Res.*, 397 F. Supp. 3d. at 578. Thus, despite the allegations contained in the SAC, Plaintiffs cannot adequately allege virtual patent marking, as their very own website disproves their allegation.

**(2)  Seoul Viosys' website referenced in the SAC establishes that its "UV LED™" patent listing of Exhibit 16 (ECF No. 93-16) refers to a catalog of "UV LED" products, does not associate any specific product it has marked with the patents which cover it, and therefore fails to meet the "association" requirement of the marking statute**

Seoul Viosys' webpage corresponding to the virtual marking patent lists of Exhibit 16 (http://www.seoulviosys.com/en/technology/legal/) (ECF No. 93-16) includes the heading "Virtual Patent Marking Lists" and states in pertinent part adjacent thereto: "Please follow the links below, *which identify groups of products* . . . ." Reiner Decl., Ex. T (emphasis added). The first patent list in Exhibit 16 bears the heading "UV LED™" and includes within it a lengthy patent listing, including those asserted in Counts 3, 4, 6, 9, 10, 12 and 13 of the SAC. ECF No. 93-16 at 2-7. Moreover, at the top of the same webpage is a menu bar including the identical heading "UV LED." Reiner Decl., Ex. T. The "UV LED" menu heading links to a page that, in turn, allows users to download a "UV LED Catalog." Reiner Decl., Ex. U.. The downloaded "Total UV Solution Provider" catalog identifies within it numerous "UV LED" products. Reiner Decl., Ex. V. Accordingly, there is no reasonable dispute that Seoul Viosys' "UV LED™" patent list heading refers to a literal catalog of products, but does not identify any "single specific patented article by product number or product name," and "does nothing to 'associate' any specific product it has marked with the patents which cover it." *Mfg. Res.*, 397 F. Supp. 3d. at 578. Plaintiffs' own website—on which Plaintiffs rely in the SAC and of which this Court can properly take judicial notice—plainly contradicts their allegation that its "UV LED™" patent listing of Exhibit 16 complies with the "association" requirement of the patent marking statute. The Court should not accept as true Plaintiffs' allegation that they have "posted information associating the patented products with their corresponding patent numbers (including the Patents-in-Suit), in compliance

with 35 U.S.C. § 287." ECF No. 93, ¶¶ 45-46. Plaintiffs have not and cannot allege adequately that they have complied with the virtual patent marking requirements, and dismissal is warranted.

## V.   CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss should be granted. Defendant submits that the deadline for answering any aspects of the Second Amended Complaint that are not the subject of this motion is suspended until after a ruling on this motion and in accordance with Fed. R. Civ. P. 12(a)(4)(A). *See Sun v. Rickenbacker Collections*, 2012 WL 2838782, at *4 (N.D. Cal. July 10, 2012) ("majority of courts have held that Rule 12(a)(4)(A) also applies … where … the defendant files a motion to dismiss that is only partially dispositive").

Date: March 10, 2023

MCCARTER & ENGLISH, LLP
MARK D. GIARRATANA
THOMAS J. RECHEN
KEVIN L. REINER

NOSSAMAN LLP
JAMES H. VORHIS
DAVID C. LEE

By:  /s/ Mark D. Giarratana
          Mark D. Giarratana

Attorneys for Defendant FINELITE, INC.